IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GREGORY TAPIA,

    Plaintiff,

vs.                                                                                            Civ. No. 21-579 WJ/SCY

TA OPERATING, LLC
d/b/a TRAVELCENTERS OF
AMERICA,

    Defendant.

## ORDER DENYING MOTION FOR SANCTIONS

Presently before the Court is Plaintiff's Motion for Sanctions for Discovery Violations, filed August 16, 2022. Doc. 53; *see also* Doc. 55 (resp.); Doc. 63 (reply).[1] In his motion for sanctions, Plaintiff asks the Court to strike Defendant's pleadings and affirmative defenses, or impose other sanctions, for what he alleges is a clear discovery violation.[2] The Court finds no discovery violation and so denies the motion for sanctions.

## PRELIMINARY MATTERS

As an initial matter, Defendant asserts that Plaintiff failed to confer before filing the present motion for sanctions and so his motion can be summarily denied. Under this District's Local Rules, before filing a motion, the "[m]ovant must determine whether the motion is opposed and a motion that omits a recitation of a good faith request for concurrence may be

---

[1] Plaintiff filed his motion on the docket twice, as documents No. 52 and 53. Both appear to be the same document except Doc. 53 has attachments. The Court denies as moot Doc. 52 and will address the arguments in Doc. 53.

[2] Plaintiff also briefly references training videos that Defendant never produced. Doc. 53 at 8. Plaintiff, however, does not seek sanctions for Defendant's failure to produce these training videos. It is unclear what, if anything, Plaintiff is asking for related to the training videos and so the Court does not otherwise address Plaintiff's reference to training videos.

summarily denied." D.N.M. LR-Civ. 7.1(a). Plaintiff's motion, indeed, does not include a recitation of a good faith request for concurrence. Defendant explains the counsel for both sides spoke on the phone before Plaintiff filed his motion but that Plaintiff's counsel "did not attempt to resolve this dispute or seek concurrence." Doc. 55 at 6. The Court need not decide whether this phone call constitutes a good faith conferral because, even turning to the merits of Plaintiff's motion, the Court denies Plaintiff's request for sanctions. Nonetheless, Plaintiff is cautioned that, before filing a motion, he must confer with Defendant in a good faith attempt to resolve the issue. Failure to do so could result in his motion being summarily denied.

As another initial matter, Plaintiff's motion asks for sanctions under Rule 1-037(B)(2) NMRA, a New Mexico state court rule that is not applicable in federal court for this procedural matter. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). Federal Rule of Civil Procedure 37(b)(2), however, is very similar to Rule 1-037(B)(2) NMRA. Federal Rule 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the Court may "strike pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii).

## FACTUAL AND PROCEDURAL BACKGROUND

Turning to the merits of his motion, Plaintiff alleges in his complaint that, while visiting a highway rest area owned and operated by Defendant TA Operating LLC, he slipped on a wet ramp from the restroom and sustained injuries. Doc. 1-1 ¶¶ 6, 8. According to Plaintiff, "Defendant has denied all liability and has contended throughout the entire litigation that no employee of Defendant witnessed the alleged incident, and that Defendant has no knowledge of the facts surrounding the incident at issue, including no knowledge as to how the incident occurred nor the last time the floor was mopped prior to Plaintiff's fall." Doc. 43 at 2; *see also*

Doc. 53-2 at 6 (Defendant's interrogatory answers, stating that "Defendant is not aware of how the incident described in the Complaint happened except as alleged by Plaintiff in this action"); *id.* at 6-7 (same, stating that "the cause of the fall had to be Plaintiff's own conduct"). Thus, Plaintiff asserts that the central issue of this case is whether, at the time of his fall, the ramp leading to the restroom was wet as Plaintiff alleges in his complaint.

During written discovery, Plaintiff asked about photos or videos of the area where the incident occurred and, on November 30, 2021, Defendant responded that "[t]here was digital video surveillance of certain areas within the TA Operating Store where the alleged incident took place, but none of those videos captured Plaintiff's alleged fall. Plaintiff is referred to the video surveillance previously exchanged . . . ." Doc. 53-2 at 11. According to Plaintiff, that video surveillance "reveals a male employee seen mopping the exact location where Plaintiff fell precisely three (3) minutes before Plaintiff walks through the area and falls." Doc. 53 at 6. Thus, Plaintiff asks for sanctions against Defendant because he asserts that "[a]t the time the Defendant answered discovery, they knew how the incident occurred, they knew the name and address of a material witness, which they did not disclose, and they had in their possession surveillance footage showing that the floor had been mopped contrary to their policies and procedures three (3) minutes before Plaintiff fell." Doc. 53 at 5-6. In other words, Plaintiff asserts that the video clearly proves Defendant's liability for Plaintiff's fall and Defendant should be sanctioned for its continual denial of liability and its continual denial of knowledge of how Plaintiff's fall occurred.

Plaintiff attached to his motion two still shots from the surveillance video—one of an employee mopping and one of Plaintiff walking through the same area. Doc. 53 at 7-8. For the purposes of this motion only, the Court disagrees with Plaintiff about what those stills establish.

3

The stills do not actually show Plaintiff falling and Plaintiff does not attach to his motion for sanctions other stills or other evidence to establish that the video surveillance shows his actual fall. Thus, contrary to Plaintiff's assertion, the video surveillance, as Plaintiff provides in this motion for sanctions, does not appear to show "the exact location where Plaintiff fell."[3] Doc. 53 at 6.

Plaintiff also asserts that the video surveillance shows the store employee mopping the area only three minutes before Plaintiff fell. The stills Plaintiff provides to the Court in his motion contain no time stamps (*see* Doc. 53 at 6-7), and Defendant argues that there is no evidence to establish that the mopping video was taken three minutes before Plaintiff fell. Plaintiff counters that "the video surveillance is motion activated and when watching the 3 clips provided, in sequence, they show Defendant's employees starting in the exact position where the clip stopped from the prior video. As such, it is clear that the ramp was mopped, outside of the cones, and fully across the ramp only 3 minutes before [Plaintiff] walks through the area." Doc. 63 at 1. Plaintiff, however, did not provide the actual video as evidence in his motion for sanctions.[4] He only provided still shots from the video, without times tamps, and so the Court cannot determine if, watching the videos in sequence, they provide an uninterrupted real time record from which it can be determined how long after the floor was mopped that Plaintiff walked through the same area. Thus, the evidence of record for this motion does not establish

---

[3] To this point, Defendant "has consistently stated that there is no video of Plaintiff's fall because, at the time of the alleged incident, there was no video camera trained on the area." Doc. 55 at 2.

[4] In his motion for sanctions, Plaintiff cites "Def. Surveillance Video," Doc. 53 ¶¶ 21, 33, but did not attach the surveillance video to the motion.

that a store employee mopped the area where Plaintiff fell (or near where Plaintiff fell) only three minutes before the fall.

## SPECIFIC DISCOVERY VIOLATION ALLEGATIONS

With this background, the Court addresses Plaintiff's specific allegations of discovery violations.

1. <u>Initial Disclosures</u>

Plaintiff first alleges that Defendant failed to provide in its initial disclosures the identity of the employee seen on the video mopping the floor. Defendant responds, however, that as part of its initial disclosures it provided "the names of every single employee working at the subject store on the date of the alleged incident, including the person in question." Doc. 55 at 1. Plaintiff does not dispute this. Instead, Plaintiff's complaint appears to be that Defendant did not match the name of the employee with the image of the employee who did the mopping. Doc. 53 ¶ 23 ("Amazingly, the male employee seen on the video snippet above mopping the floor, was never identified by the defense as a witness with knowledge in response to Plaintiff's discovery requests, nor in Defendant's initial disclosures, thus prohibiting Plaintiff from deposing him prior to the close of discovery.").

Rule 26 provides that a party's initial disclosures must include "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P.26(a)(1)(i). Although Defendant asserts, and Plaintiff does not contest, that it provided the name of every employee working at the store on the date of the fall, Defendant does not assert what information it provided about these employees to comply with the requirement that it also provide the subjects of the discoverable

5

information the employees possess. Read broadly, Plaintiff's argument could be that, in addition to providing the name of the employees working at its store when he fell, Rule 26 required Defendant to precisely identify what those employees were doing that causes Defendant to believe they are likely to have discoverable information. If this is Plaintiff's argument, the Court rejects it. Plaintiff cites no authority in support of an argument that a party's initial disclosures must provide such detailed information. By providing the name of every employee that was working in the store at the time of Plaintiff's fall, Defendant provided the names of individuals who are likely to have information about Defendant's fall. Not also providing information about exactly what each of these employees were doing during the time Plaintiff was in the store did not violate Rule 26.

      Plaintiff further argues that Defendant violated Rule 26 by not providing, as part of its initial disclosures, the video of the employee mopping. Here, although not explicitly stated, Plaintiff's argument appears to be that Rule 26 obligated Defendant to provide as part of its initial disclosures any videos that might be helpful to *Plaintiff's* case. *See* Doc. 63 ¶ 2 ("Defendant had a duty to disclose said video and the identity of any person with knowledge of how this incident occurred per Rule 26."). But Plaintiff does not cite any authority in support of such a contention. Granted, Rule 26 would require Defendant to provide, as part of its initial disclosures, a copy or description of the video if Defendant intended to use it to support *its* defense. Fed. R. Civ. P.26(a)(1)(ii). Plaintiff's argument that Defendant violated Rule 26, however, is not premised on an allegation that Defendant failed to include the video in its initial disclosures even though it planned on using the video in support of *its* defense. As such, Plaintiff

has not demonstrated that Defendant violated Rule 26 by not providing the video as part of its initial disclosures.[5]

2. <u>Interrogatories and Requests for Production</u>

As Plaintiff notes, in interrogatory 22 he asked Defendant if there was any "photographic, video, digital, analog, or audio surveillance or recordings of the store including the area where the incident in the complaint occurred." Doc. 53 at 5. Defendant responded that there was digital video surveillance of "certain areas" of the store "but none of those videos captured Plaintiff's alleged fall" and referred Plaintiff to the video it "previously exchanged under separate cover." *Id*. Thus, the undisputed evidence demonstrates that, in response to Plaintiff's interrogatory asking Defendant to identify videos like the one at issue, Defendant did identify the video at issue. Accordingly, the Court rejects Plaintiff's argument that Defendant failed to identify the video at issue in its response to Plaintiff's interrogatory.

In request for production 18, Plaintiff asked Defendant to provide a copy of any "video depicting the subject incident." Doc. 53 at 5. Defendant then responded that it "is not in possession of any materials responsive to this request." *Id*. Viewing the "subject incident" as the fall at issue in this lawsuit, Defendant's response is accurate. Defendant does not possess a video of the actual fall. True, the still shots could create an inference in Plaintiff's favor that the store employee mopped other areas not seen in the video and, shortly after the mopping, Plaintiff slipped on the wet floor in the mopped area. But the Court will not sanction Defendant for defending against Plaintiff's claims without accepting that inference. Said another way,

---

[5] Even if Defendant had violated Rule 26 by not providing the video with its initial disclosures (which were due by August 12, 2021, *see* Doc. 6), Defendant produced the video on November 8, 2021. Discovery in this case closed on July 28, 2022. Docs. 18, 39. Thus, Plaintiff had more than eight months after disclosure of the video to conduct further discovery related to the video.

Defendant is not required to accept all inferences in Plaintiff's favor when stating its affirmative defenses and denying liability.

More significantly, Defendant did produce the video at issue. Indeed, Plaintiff acknowledges that Defendant did, in fact, disclose this video. Doc. 63 at 1. To that end, the Court rejects Plaintiff's argument that Defendant "purposefully with[held] material evidence." Doc. 53 at 10.

Given the undisputed fact that Defendant did produce the video, Plaintiff's real complaint appears to be with the timing of the disclosure. Defendant responded to written discovery on November 30, 2021, indicating the video surveillance was "previously exchanged." *See* Doc. 53-2 at 11 (Defendant's responses to interrogatories); Doc. 19 (certificate of service). In his reply, Plaintiff notes that he received the video surveillance on November 8, 2021. Doc. 63 at 1, 3. Apparently, as Plaintiff points out multiple times, this was the day before his deposition. Plaintiff does not, however, allege that Defendant failed to identify or produce the video within 30 days of an interrogatory or request for production requiring such identification or production. Therefore, the Court does not conclude that the timing of Defendant's identification and production of the video is sanctionable.

Finally, in reply, Plaintiff complains that he asked the corporate representatives about the employee's identity and the corporate representative was unable to provide this information. Plaintiff, however, filed no motion related to the allegedly inadequate Rule 30(b)(6) deposition. Therefore, Plaintiff failed to obtain a court order on which to predicate his Rule 37(b) motion for sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A) (providing sanctions "For Not Obeying a Discovery Order"). Further, as Defendant points out, to obtain this information, "Plaintiff could have

simply served additional requests specifically aimed at obtaining this person's identity." Doc. 55 at 4-5.

For the above reasons, the Court denies Plaintiff's motion for sanctions, including Plaintiff's request to strike Defendant's pleadings and affirmative defenses or for other financial sanctions and Plaintiff's request for fees and costs associated with the motion for sanctions.

## FEE SHIFTING

Defendant requests its expenses associated with responding to the motion for sanctions. To support this request, Defendant cites the standard for fees associated with a motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(B) ("If the motion [to compel] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."). Defendant, however, provides no authority in support of the notion that Rule 37(a)(5)(B) governs motions for sanctions brought under Rule 37(b). Rule 37(b), for its part, allows for an award of fees against a party who fails to comply with a court order, but does not offer a parallel award for a party who successfully opposes a motion for sanctions, like Rule 37(a)(5)(B) does. *See* Fed. R. Civ. P. 37(b)(2)(C). Defendant cites no other authority to support a conclusion that Rule 37(b)(2)(C) requires fee shifting when a party successfully opposes a Rule 37(b)(2) motion for sanctions. Accordingly, the Court declines to grant expenses in Defendant's favor.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions for Discovery Violations (Doc. 53) is **denied.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**